******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* SHELDON A. SCHULER
(AC 36244)

Gruendel, Alvord and Sheldon, Js.

*Argued December 11, 2014—officially released June 16, 2015*

(Appeal from Superior Court, judicial district of New Haven, B. Fischer, J.)

*Katherine C. Essington*, for the appellant (defendant).

*Dan A. Brody*, certified legal intern, with whom were *Harry Weller*, senior assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *Gary W. Nicholson*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Sheldon A. Schuler, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3).[1] On appeal, the defendant claims that the court improperly (1) admitted evidence of the defendant's prior sexual misconduct toward the victim and (2) instructed the jury concerning such prior misconduct evidence. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts from the evidence presented at trial. On January 27, 2012, the victim was celebrating her thirtieth birthday at her home with several friends and family members.[2] Among those in attendance were the victim's three older sisters, CM, LM and SM, and the defendant. The defendant cohabitated with SM at the time and is the father of three of her children.

During the party, the victim drank three shots of alcohol and one wine glass sized cup of vodka punch and smoked marijuana. At around 12 a.m., the victim started to take a sip of vodka punch when she felt a spinning sensation in her head. One of her sisters, CM, observed the victim stumble and noted that she appeared to be intoxicated. Shortly afterwards, the victim decided to go upstairs and lie down. After going upstairs, she felt cool air coming from a fan in her son's bedroom and decided to enter that room instead of her own bedroom.[3] She lay down on the floor, hoping that the cool air would alleviate the spinning sensation in her head. When SM entered the room and asked the victim if everything was okay, the victim responded that something was wrong. The victim then removed her jewelry and shirt and fell asleep. SM noticed that the victim appeared to be intoxicated.

At around 1:30 a.m., the party ended and SM and KS, a friend of the victim, went upstairs to say goodbye. SM placed the victim's cell phone near her head and told her that they had cleaned up and were going to leave. At that point, only CM, SM, KS, and the defendant remained in the house. After locking the doors, CM drove SM and the defendant to their home. KS left the victim's house separately.

At approximately 1:40 a.m., SJ, the victim's boyfriend, arrived at the victim's house. He had been invited to the party but had been unable to attend. On his way over to the victim's house, he placed several calls to the victim's cell phone but received no response. Upon arriving at the house, he noticed that the lights were on, and he proceeded to knock on the door, ring the doorbell, and shout into the mailbox slot. After receiving no response, SJ left the victim's house and went out with a friend. SJ testified that the victim was a very heavy sleeper, especially after consuming alcohol.

Meanwhile, SM and the defendant arrived back at their home. Just before 2:46 a.m., the defendant told SM that he needed to go to the bank and to buy cigarettes. The defendant walked several blocks from his house and then called a taxi using SM's cell phone. The taxi picked up the defendant at 2:53 a.m. and dropped him off at the victim's house. The defendant then entered the victim's house using keys given to him by SM earlier in the night.

At approximately 3 a.m., the victim believed that she was dreaming that someone was on top of her, licking her breasts and vagina, and penetrating her vagina. When the victim awoke, she found the defendant on top of her, subjecting her to sexual intercourse. She quickly pushed the defendant off of her, screamed, and ran into her bedroom. Although it was dark in her son's room, she was able to identify the defendant because the lights in her bedroom were on, casting light into her son's room. The victim heard the defendant walk downstairs and then saw him, through an upstairs window, exit the house through the back door. The victim quickly located her car keys and cell phone, and drove to SM's home.

As she was driving to SM's home, the victim contacted SJ on his cell phone. The victim was crying and more upset than SJ had ever witnessed her at any other time during their four year relationship. The victim would not explain to SJ what was wrong, but told him that she was driving to SM's home. When she arrived, the victim told SM what had happened. SM responded by stating her belief that the defendant was at home, but after searching the home, she determined that he was not there.

About ten to fifteen minutes later, SJ arrived at SM's home. As he was standing outside, the defendant arrived. The defendant approached SJ and said, "Do you wanna fight?" SJ was confused by the question, as he had not yet been apprised of the evening's events. As a result, no confrontation occurred between him and the defendant, and the defendant entered the home. When the defendant entered, SM began to yell at him and hit him repeatedly. Initially, the victim ran away, but later she joined her sister in hitting the defendant. Eventually, SJ pulled the victim away from the defendant, and together they left the premises in SJ's car.

SJ then drove the victim to Yale-New Haven Hospital, where she was examined by a nurse with specialized training in treating victims of sexual assault. After examining the victim, the nurse gathered evidence from her using a sexual assault evidence collection kit, and notified the police of the incident. During the examination, saliva was found on both of the victim's breasts and sperm was found in the victim's vagina. Subsequent testing of DNA extracted from the seized saliva and

sperm samples revealed that it matched the defendant's DNA.

The defendant was subsequently charged with one count of sexual assault in the second degree in violation of § 53a-71 (a) (3). On July 10, 2013, at the conclusion of trial, a jury found the defendant guilty as charged. The court then sentenced the defendant to ten years imprisonment, execution suspended after seven years, with fifteen years of probation. This appeal followed.

I

The defendant claims on appeal that the court improperly admitted evidence of the defendant's prior sexual misconduct toward the victim. The defendant first claims that the evidence was inadmissible under the standard set forth in *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008),[4] and codified under § 4-5 (b) of the Connecticut Code of Evidence.[5] The defendant also claims, in the alternative, that the evidence was inadmissible under § 4-3 of the Connecticut Code of Evidence because its prejudicial effect outweighed its probative value.

The following procedural history is relevant to the defendant's claims. On July 8, 2013, the first day of evidence at trial, the defendant filed a motion in limine, seeking a ruling that would preclude evidence related to a prior instance of sexual misconduct by the defendant. In the motion, the defendant argued that the prior misconduct was irrelevant to the issues in the case and was not admissible under § 4-5 of the Connecticut Code of Evidence. The state presented an offer of proof regarding the prior misconduct evidence, consisting entirely of testimony from the victim. The victim testified that during the summer of 2011, approximately six months prior to the charged sexual assault, she had had another nonconsensual sexual encounter with the defendant. The victim stated that on that occasion, she had attended a bar with SM, the defendant, and several friends. While at the bar, she had consumed alcohol. Later that night, the defendant drove SM and the victim back to the defendant's home. Because the victim felt intoxicated, she decided to sleep in SM's daughter's bedroom, which was unoccupied that evening. She then went upstairs, took off her pants, locked the bedroom door, and went to sleep. At some point in the evening, she awoke to find the defendant at the bottom of the bed with his head between her legs. The victim remembered that the defendant was spreading her legs apart, attempting to perform oral sex upon her, and repeatedly saying, "stop playing." Upon awakening, she jumped out of the bed and ran into a nearby bathroom.

Defense counsel was then given an opportunity to cross-examine the victim and asked whether she and the defendant had been involved in a consensual sexual relationship prior to the 2011 incident. The victim

responded that they had not.

The court then allowed both parties to present argument on the admissibility of the prior misconduct. The state argued that the evidence was admissible under *DeJesus* because of the similarities between the charged and uncharged misconduct. Additionally, the state argued, pursuant to *State* v. *James G.*, 268 Conn. 382, 844 A.2d 810 (2004), that the proffered prior sexual misconduct evidence was admissible to show that the defendant had a particular sexual interest in the victim. The defendant argued that, because he was not contesting that sexual contact had occurred between himself and the victim, but only that such conduct was nonconsensual, evidence of other sexual encounters between them would be irrelevant and highly prejudicial. During argument, defense counsel conceded that, "under the *DeJesus* guideline and all of the sex cases similar to it, it's propensity evidence, I agree with that, but it's not needed in this case." Shortly thereafter, the court ruled that the evidence was admissible. The victim later testified at trial regarding the 2011 incident involving the defendant. We now consider each of the defendant's evidentiary claims.

A

The defendant first claims that the court improperly admitted evidence of his prior sexual misconduct toward the victim for the purpose of showing propensity under § 4-5 (b) of the Connecticut Code of Evidence and *DeJesus*. Specifically, the defendant claims that the court improperly admitted the challenged evidence because his sexual misconduct in the prior incident was not of an aberrant and compulsive nature. The state argues on appeal that the defendant is precluded from challenging the admissibility of the prior sexual misconduct under § 4-5 (b) because he waived that claim when he conceded that the evidence was admissible under *DeJesus*. We agree with the state.

"[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the

court and the opposing party to trial by ambush. . . . Thus, because the sine qua non of preservation is fair notice to the trial court . . . the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." (Citations omitted; internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753–54, 66 A.3d 869 (2013).

Our review of the record reveals that the defendant failed to preserve this issue during his trial. The defendant expressly conceded at trial that evidence of his 2011 prior sexual misconduct toward the victim was propensity evidence under *DeJesus.* Thus, although the defendant objected to the evidence on the grounds of relevancy and undue prejudice, he did not properly object to it under *DeJesus.* See Practice Book § 60-5.

The defendant requests, in the alternative, that we review this claim under the plain error doctrine. In attempting to establish plain error, the defendant argues that "the use of prior sexual misconduct in order to show propensity ought to be limited to child sexual assault cases." Our Supreme Court, however, has clarified that the liberal admissibility standard adopted in *DeJesus* applies to "*all* sexual misconduct, regardless of the age of the victim." (Emphasis in original.) *State* v. *DeJesus*, supra, 288 Conn. 472 n.34. Additionally, the defendant argues that § 4-5 (b) of the Connecticut Code of Evidence should be "limited to cases where the defendant's alleged behavior is highly unusual, likely to be outside the experience or understanding of the average juror, and . . . involves multiple prior incidents . . . ." This request would require us to impose additional restrictions beyond those already set forth in *DeJesus* and § 4-5 (b).[6] The defendant claims no specific error in the court's application of the code of evidence or our case law, and, therefore, his claim fails to establish the existence of a plain error. See *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009) (appellant cannot prevail under plain error doctrine "unless he demonstrates that the claimed error is so clear and so harmful that failure to reverse the judgment would result in manifest injustice").

B

We now consider the defendant's alternative claim that the court improperly admitted the prior sexual misconduct evidence because its prejudicial effect outweighed its probative value. Specifically, he argues that the evidence had limited probative value because it was not relevant to the issue of whether the victim was physically helpless,[7] it concerned sexual misconduct toward the same complaining witness, and it was based on only one prior incident of such misconduct. He further argues that the probative value of the evidence

was substantially outweighed by its prejudicial effect because of its potential to confuse and to arouse the emotions of the jurors. The state argues that the evidence is probative of the victim's lack of consent to the defendant's sexual advances and the defendant's propensity to subject the victim to such unwanted sexual contact while she was incapacitated. We agree with the state.

We begin by setting forth the appropriate legal principles. Evidence that is otherwise relevant "may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jur[ors]. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . . Finally, [t]he trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Allen*, 140 Conn. App. 423, 439–40, 59 A.3d 351, cert. denied, 308 Conn. 934, 66 A.3d 497 (2013).

In the present case, as the defendant concedes in his appellate brief, the charged and uncharged sexual misconduct were strikingly similar. Both incidents involved the same victim and similar circumstances in which the victim was sleeping after having consumed alcohol. Furthermore, the two incidents occurred within six months of each other. The similarities between the two incidents make the evidence of prior misconduct highly probative. See *State* v. *John G.*, 100 Conn. App. 354, 364–65, 918 A.2d 986, cert. denied, 283 Conn. 902, 926 A.2d 670 (2007). As explained in *DeJesus*, "prior acts of similar misconduct . . . are deemed to be highly probative because they tend to establish a necessary motive or explanation for an otherwise inexplicably horrible crime . . . and assist the jury in assessing the probability that a defendant has been falsely accused of such shocking behavior." (Citations omitted.) *State* v. *DeJesus*, supra, 288 Conn. 469–70.

Moreover, the defendant's argument that the evidence was not probative because it did not prove the victim's physical helplessness misconstrues the full extent of the state's burden of proof. The prosecution

was required to prove not only that the victim was physically helpless at the time of the alleged sexual assault, but also that the defendant subjected her to sexual intercourse without her consent while she was in such a physically helpless state. See General Statutes § 53a-71 (a) (3). Evidence that the defendant had previously engaged in similar misconduct with the victim while she was in a similar condition was, therefore, highly probative of his propensity to engage in conduct like that of which he was accused of in this case. Finally, the defendant's argument that the evidence had little probative value because it involved only one incident involving the same victim is also unpersuasive. The evidence was probative of the defendant's sexual interest in this particular victim, as well as his propensity to engage in conduct similar to that alleged in this case. See *State* v. *James G.*, supra, 268 Conn. 390–92; *State* v. *Irizarry*, 95 Conn. App. 224, 235, 896 A.2d 828 (prior misconduct involving same victim is "especially illuminative of the defendant's motivation and attitude toward the victim, and, thus, of his intent as to the incident in question"), cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006).

Finally, we address the defendant's concerns about prejudice. "[E]vidence is excluded as unduly prejudicial when it tends to have some adverse effect upon a defendant *beyond tending to prove the fact or issue that justified its admission into evidence.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Antonaras*, 137 Conn. App. 703, 722–23, 49 A.3d 783, cert. denied, 307 Conn. 936, 56 A.3d 716 (2012). The defendant argues that there was a danger that the jury would combine the charged and uncharged conduct in determining his guilt. The defendant also argues that the evidence would arouse the emotions of the jurors. There was, however, no risk of confusing the two incidents or conflating the facts of one with the other. Both incidents were of the same character, so there was no risk that, by learning of the prior incident, the jurors would learn something new that might arouse their emotions and cause them to find the defendant guilty of the charged offense because of his bad character.

Moreover, concerns regarding the prejudicial impact of evidence can also be mitigated by proper jury instructions. See *State* v. *Orellana*, 89 Conn. App. 71, 89, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005). Immediately after the prior misconduct evidence was presented, the court instructed the jury that "evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crime charged . . . . I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the information." During its final charge, the court provided similar instruction, stating, "I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the information, *including any alleged prior*

*sexual misconduct.*" (Emphasis added.) "Absent evidence to the contrary, we presume the jury followed the court's limiting instruction." *State* v. *Messam*, 108 Conn. App. 744, 758, 949 A.2d 1246 (2008). Accordingly, we conclude that the court properly determined that the demonstrable probative value of the evidence outweighed the insubstantial prejudice, and, thus, the jury could be counted on to use the evidence for its properly limited purposes.

## II

The defendant's final claim is that the court improperly instructed the jury concerning the uncharged prior sexual misconduct evidence. Specifically, he claims that the court erred when it provided limiting instructions both during the victim's testimony at trial and during its final charge to the jury.

The following procedural history is relevant to the resolution of the defendant's claim. On July 8, 2013, after ruling on the admissibility of evidence related to the defendant's prior sexual misconduct, the court stated that it would give limiting instructions to the jury after the testimony was presented and again in its final charge. The court then asked the defendant whether he would prefer that the instruction come after the state's direct examination or after his cross-examination. The defendant requested that the instruction be provided after the state's direct examination.

The trial proceeded, and the state called the victim as its first witness. Upon the conclusion of the state's direct examination of the victim regarding the defendant's prior sexual misconduct, the court gave the jury the following limiting instruction: "Ladies and gentlemen, from time to time during the trial, I am going to instruct you on the law, and I'm going to instruct you on a limited aspect of the law which is other misconduct, criminal sexual behavior, which you just heard evidence about. This will be repeated to you in my final charge. And the law is as follows: In a criminal case in which the defendant is charged with a crime exhibiting aberrant and compulsive criminal sexual behavior, evidence of the defendant's commission of another offense is admissible and may be considered for its bearing on any matter to which it is relevant; however, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crime charged in the information. Bear in mind as you consider this evidence that at all times the state has the burden of proving that the defendant committed each of the elements of the offense charged in the information. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the information. That completes it."

In its final charge to the jury, the court provided, inter alia, the following instruction: "Next, I want to

talk to you about other misconduct, uncharged sexual misconduct. Now, in a criminal case, ladies and gentlemen, in which the defendant is charged with a crime exhibiting—excuse me, exhibiting criminal sexual misconduct, evidence of the defendant's commission of another uncharged offense involving similar criminal sexual misconduct may be considered—may be considered for its bearing on any matter to which it is relevant, so long as you believe it, that the other sexual conduct did, in fact, occur and was, in fact, criminal misconduct. Consensual sexual contact is not criminal sexual misconduct.

"In this case, the state offered evidence of prior sexual contact between [the victim] and the defendant in August, 2011. It is your job to determine, first, whether that prior sexual contact did, in fact, occur, and, second, if you believe it did occur, whether it was criminal misconduct. If you believe the prior sexual contact occurred and that it was criminal misconduct, then you must also find that it rationally and logically supports a theory that the defendant had a propensity to commit similar criminal sexual misconduct. If, on the other hand, you find the prior sexual contact either did not occur or was not criminal misconduct, then you must also find that it does not tend to rationally or logically support a theory that the defendant had a propensity to commit similar criminal sexual misconduct, and you must not consider the prior sexual misconduct evidence for any purpose as part of your deliberations but must ignore it altogether.

"You must keep in mind that evidence of . . . criminal sexual misconduct on its own is not sufficient to prove the defendant is guilty of the crime charged in the information. Even if you determine the prior criminal sexual misconduct occurred, you must bear in mind that at all times the state still has the burden of proving that the defendant committed each and every one of the elements of the offense charged in the information. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the information, including any alleged prior sexual misconduct." We now consider each of these limiting instructions in turn.

A

The defendant claims that the court erred when it provided a limiting instruction to the jury immediately after the prior sexual misconduct testimony was presented. The defendant first argues that the court erred when it instructed the jury that the prior sexual misconduct evidence could be used for "any relevant purpose." The state argues that the defendant waived this claim when he failed to object to the limiting instruction and later adopted the same language in his own request to charge. Although the defendant concedes that this claim was not preserved, he urges us to review it nonetheless under the plain error doctrine or, alternatively, under

*State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[8] Our Supreme Court has concluded that when a party fails to object to a proposed instruction and then later expresses satisfaction with it and argues it was proper, the party has waived his right to challenge it on appeal. See *State* v. *Fabricatore*, 281 Conn. 469, 481, 915 A.2d 872 (2007). Accordingly, we agree with the state, and, as a result, the defendant's claim fails under both the plain error doctrine and *Golding*.

B

We now turn to the defendant's claim that, during its final charge to the jury, the court erred in its prior sexual misconduct instruction. Specifically, the defendant argues that its instruction improperly contained a mandatory presumption. In considering this claim, we note that the defendant now challenges the very same instruction that he requested the court to use.[9] The state, thus, argues that any error was induced by the defendant and, therefore, is unreviewable on appeal. See *State* v. *Walton*, 227 Conn. 32, 67, 630 A.2d 990 (1993) (declining to review claim of instructional error where appellant had requested challenged charge). The defendant concedes that the claimed error was induced,[10] yet he urges us to review his claim under the plain error doctrine or, in the alternative, under *Golding*. We conclude that the claim fails under both *Golding* and the plain error doctrine.

On July 10, 2013, the court stated on the record that defense counsel had submitted a request to charge regarding the evidence of prior sexual misconduct and that the court would adopt the defendant's request. The court then read the defendant's requested instruction to the jury, adding only that the prior event occurred in August, 2011. Thus, as a matter of law, any error in the instruction was induced by the defendant and may not form the basis of a reversal. See *State* v. *Gibson*, 270 Conn. 55, 66, 850 A.2d 1040 (2004) (induced error defined as "[a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling" [internal quotation marks omitted]). We now consider the defendant's request to review his claim under *Golding* or the plain error doctrine.

Our Supreme Court has concluded that *Golding* review is inappropriate where the error is induced. *State* v. *Cruz*, 269 Conn. 97, 105, 848 A.2d 445 (2004). In *Cruz*, the defendant was convicted of assault in the first degree and appealed the judgment on the basis that the court erred when it instructed the jury on self-defense. Id., 101–103. The defendant, however, requested the self-defense instruction and, as a result, our Supreme Court held that any error was induced and that induced claims inherently fail under *Golding*. Id., 106–107. In the present case, the defendant similarly requested the very instruction that he now challenges

on appeal. We, therefore, decline to consider this claim under *Golding.*

We now turn to the defendant's alternative claim of plain error. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . .

"[W]e recently clarified the two step framework under which we review claims of plain error. First, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernible on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . We made clear . . . that this inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Citation omitted; internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 204–205, 982 A.2d 620 (2009).

Our review of the record leads us to the conclusion that the claimed error in the jury instruction, although potentially ambiguous in its meaning, fails to rise to the level of plain error. On appeal, the defendant challenges the following statement made during the instruction: "If you believe the prior sexual contact occurred and that it was criminal misconduct, then *you must also find* that it rationally and logically supports a theory that the defendant had a propensity to commit similar criminal sexual misconduct . . . ." (Emphasis added.) The defendant argues that the word "must" created a mandatory presumption, instructing the jury that if it believed that the August, 2011 incident occurred, then it was required to find that the defendant had a propensity to engage in sexual misconduct. Although this is one possible interpretation of the instruction, it is not the only reasonable one. The jury also could have understood the statement to require that it make two separate factual findings before it could consider the victim's testimony concerning the August, 2011 incident in reaching its verdict. Accordingly, the instruction could be understood as requiring the jury, first, to evaluate the credibility of the victim's testimony regarding the 2011 misconduct and, second,

to determine if that misconduct logically supports a theory of propensity. The use of "must" in that context requires the jury to make two distinct findings before it could consider the weight of the uncharged sexual misconduct evidence. Thus, we conclude that the statement was, at most, ambiguous and, therefore, not an error so plain on its face and "obvious in the sense of being not debatable." *Crawford* v. *Commissioner of Correction*, supra, 294 Conn. 205. Consequently, the defendant's claim fails to meet the high standard of the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (3) such other person is physically helpless . . . ."

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] On the night of the party, the victim's children were not at her residence.

[4] In *DeJesus*, our Supreme Court concluded that "evidence of uncharged misconduct properly may be admitted in sex crime cases under the liberal standard, provided its probative value outweighs its prejudicial effect, to establish that the defendant had a tendency or a propensity to engage in certain aberrant and compulsive sexual behavior." *State* v. *DeJesus*, supra, 288 Conn. 463. This conclusion created a limited exception to § 4-5 (a) of the Connecticut Code of Evidence, which prohibits "[e]vidence of other crimes, wrongs or acts of a person . . . to prove the bad character or criminal tendencies of that person." The *DeJesus* exception was later codified in § 4-5 (b) of the Connecticut Code of Evidence.

[5] Section 4-5 (b) of the Connecticut Code of Evidence was amended in June, 2011 (effective January 1, 2012) to codify the principles of *DeJesus*. It provides that "[e]vidence of other sexual misconduct is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct if: (1) the case involves aberrant and compulsive sexual misconduct; (2) the trial court finds that the evidence is relevant to a charged offense in that the other sexual misconduct is not too remote in time, was allegedly committed upon a person similar to the alleged victim, and was otherwise similar in nature and circumstances to the aberrant and compulsive sexual misconduct at issue in the case; and (3) the trial court finds that the probative value of the evidence outweighs its prejudicial effect." Conn. Code Evid. § 4-5 (b).

[6] The court in *DeJesus* placed several requirements on the admission of prior sexual misconduct evidence. The court stated that this evidence may be admitted in sex crimes if: "(1) the trial court finds that such evidence is relevant to the charged crime in that it is not too remote in time, is similar to the offense charged and is committed upon persons similar to the prosecuting witness; and (2) the trial court concludes that the probative value of such evidence outweighs its prejudicial effect. *State* v. *DeJesus*, supra, 288 Conn. 476. "In assessing the relevancy of such evidence, and in balancing its probative value against its prejudicial effect, the trial court should be guided by this court's prior precedent construing the scope and contours of the liberal standard pursuant to which evidence of uncharged misconduct previously was admitted under the common scheme or plan exception. Lastly, prior to admitting evidence of uncharged sexual misconduct under the propensity exception adopted herein, the trial court must provide the jury with an appropriate cautionary instruction regarding the proper use of such evidence." Id., 476–77.

[7] General Statutes § 53a-65 (6) defines " '[p]hysically helpless' " as when "a person is . . . unconscious, or . . . for any other reason, is physically unable to communicate unwillingness to an act of sexual intercourse or sexual contact."

[8] "Under [*State* v. *Golding*, supra, 213 Conn. 239–40], a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review

the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 89–90, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

[9] On July 10, 2013, the court stated that it had received a request to charge from the defendant regarding the prior sexual misconduct evidence. The court stated on the record as follows: "I am going to adopt that requested charge. . . . [B]ut I'm just adding the words that the alleged event happened in August of 2011."

Also on July 10, 2013, the court stated the following regarding the prior sexual misconduct limiting instruction: "I did review a requested charge by the defendant, Attorney [Christopher] Duby on behalf of the defendant, on uncharged misconduct, prior sexual behavior. I am—I am going to adopt that requested charge. I've indicated that to—to the state, again, in our conference this morning. So, the judicial secretary is preparing that right now. She will give you a copy of that, of course, Attorney Duby already has submitted it, but I'm just adding in the words that the alleged event happened in August of 2011."

The court then asked counsel whether there was any other issues regarding the instruction, to which the prosecutor and defense counsel responded, "No, sir" and "No, Your Honor," respectively.

[10] In the defendant's appellate brief, he states, "With respect to the court's final instruction, because the court adopted defense counsel's proposed instruction, [the defendant] concedes that any error was induced."

––––––––––––––––––––